**UNITED STATES of America**

v.

**Doctor FORREST.**

**Crim. No. 77–111.**

United States District Court,
E. D. Pennsylvania.

July 27, 1977.

Thomas J. McBride, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Harry Siegel, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Presently before the Court are motions of defendant, Doctor Forrest, for a new trial and/or arrest of judgment. The defendant waived a jury trial and on June 27, 1977 the Court found defendant guilty of all three counts of the indictment, charging the defendant in Count I with possession with intent to distribute 226.5 grams of marijuana, in Count II with possession with intent to distribute 84 tablets of methamphetamine, and in Count III with possession with intent to distribute 275 packets of heroin, all in violation of 21 U.S.C. § 841.[1] The Court has determined that defendant's motions are without merit and must be denied.

In his motions the defendant contends, *inter alia*, that (1) the evidence was not sufficient to support a finding of guilty; (2) the Court erred in not suppressing evidence recovered as a result of an allegedly defective search warrant; and (3) the Court erred in not suppressing defendant's statement which he claims was made without giving him the required *Miranda* warnings.

*Sufficiency of the Evidence*

The defendant in support of his motion in arrest of judgment alleges that the evidence was insufficient to support the verdict.[2] Since such a ground is properly advanced in support of a motion for judgment of acquittal,[3] we have considered defendant's motion as one for judgment of acquittal. The evidence produced at trial, viewed in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Armocida*, 515 F.2d 29 (3d Cir.), *cert. denied* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), is more than sufficient to support the Court's verdict of guilty. We summarize the evidence as follows:

Lieutenant Wilson and Officers Jumper and Bongard testified that at approximately 8:00 p. m. on January 14, 1977 they approached the two-story residence at 4439 Paul Street and knocked at the door. Defendant answered and after Officer Jumper exhibited to him a search warrant, Officers Jumper, Bongard and Wilson and their back-up detail entered the residence. Prior to searching the house, the officers asked the defendant whether there were any weapons or currency in the house. The defendant directed the police to a .22 caliber automatic revolver located behind hatboxes in the closet of the rear bedroom on the second floor, and to $11,000 in the pockets of one of his suits hanging in the front bedroom closet on the second floor, $700 on his person, and $61 in a locked dresser drawer to which Forrest provided the key. In return for the currency, defendant was given a receipt which he signed, which receipt acknowledged that the money was found in "my residence." (Exhibit G–8).

---

1. 21 U.S.C. § 841 states in pertinent part:

    (a) . . . it shall be unlawful for any person knowingly or intentionally—

    (1) to . . . possess with intent to . . . distribute . . . a controlled substance.

    Marijuana, methamphetamine and heroin are each within the statutory definition of a controlled substance. 21 U.S.C. § 812.

2. A motion for arrest of judgment may only be raised on the grounds that (1) the indictment or information does not charge an offense; or (2) the court was without jurisdiction of the offense charged. Fed.R.Crim.P. 34; 2 Wright, Federal Practice and Procedure: Criminal §§ 571–574 (1969). Since the defendant asserts neither of these grounds, the motion will be denied.

3. Fed.R.Crim.P. 29(c).

Officer Jumper testified that the defendant in giving his personal history acknowledged that his residence was 4439 Paul Street. The search of the residence revealed a sliding panel in the wall of the kitchen. Behind the sliding panel were found 226.5 grams of marijuana, 84 tablets of methamphetamine, and 275 packets of heroin. When shown a bag containing a tan powder the defendant responded, "I'm not dumb enough to tell you what that is." The tan powder was later analyzed to be heroin.

The defendant took the stand in his own defense and testified that he did not know that narcotics were concealed on the premises. He said that the money which was recovered on the premises was not related to narcotics traffic, but was a payoff he received from playing the numbers in November and December of 1976. Defendant claimed that he did not reside at 4439 Paul Street, but was there doing carpentry work for the absentee owner. He said that his occasional overnight stays were necessary to protect the house and his construction materials from vandalism common to that neighborhood. He testified that he had built the hiding place in the kitchen at the direction of the owner who wanted a place in the house to hide valuables. The defendant explained that he had kept the $11,000 in his suit hanging in the back of the bedroom closet for over a month because he thought it a safer hiding place than the concealed panel in the kitchen. At all times in the course of his testimony the defendant insisted that 4439 Paul Street was not his residence.

■■■ Possession of large amounts of drugs permits an inference of intent to distribute. *United States v. Brischetto*, 538 F.2d 208 (8th Cir. 1976); *United States v. Ramirez-Valdez*, 468 F.2d 235 (9th Cir. 1972). Because of the large quantity of drugs in the instant case, the Court did make the inference and was convinced beyond a reasonable doubt that the defendant

did knowingly and intentionally possess the drugs involved in all three counts of the indictment with the specific intent to distribute them.[4] This Court is convinced beyond a reasonable doubt, on the basis of the evidence summarized above, that the drugs were in the possession of the defendant and that he intended to distribute them. His testimony that he did not know that the drugs were in the house and that they did not belong to him was not credible.

*Motion to Suppress Physical Evidence*

On January 14, 1977, Philadelphia Municipal Court Judge Samuel Lehrer issued a warrant to search the residence located at 4439 Paul Street for narcotics and other controlled substances. The warrant was based upon an affidavit which states:

> On 1–13–77 I received information from a reliable informant I have known for a period of 5 months and in this time has given me information leading myself and my partner Plcm. BONGARD to the arrest of five persons for violation of the controlled substance act 1972 and controlled substance being confiscated on all five occasions. The informant stated that he calls the residence of FORREST and FORREST a male he has know for a long period of time and informs FORREST of a quantity of drugs he wishes to purchase and FORREST tells him where to wait and who he will send out with the drugs. The informant states that he was personally buying off forrest till he became hot and now forrest only allows specific street dealer to come to his location. The informant stated that he called the residence between 1–9–77 and 1–13–77 on 3 separate occasions and ordered bundles of heroin and on all three occasion forrest sent out Frank PUGLIATTI and he came over to my informant and gave him the heroin and my informant would pay PUGLIATTI and he would go back into 4439 Paul St. My informant states that he was invited into Forrest

---

4. The Court also found intent to distribute from the testimony that a Maurice Salkowitz was arrested outside 4439 Paul Street immediately prior to the search; a search of Salkowitz revealed heroin in a Chesterfield cigarette package; the search of 4439 Paul Street uncovered a number of empty Chesterfield cigarette packages hidden with the heroin.

house by forrest who wished to talk to him. The informant was inside the house between 1–10–77 and 1–13–77 and spoke with FORREST who asked my informant If my informant if he wished to deal for him and get his dope for $65 a bundle. my informant declined for the time being and asked if he could cop and forrest produced a bag containing about 25 bundles of heroin and gave one to my informant for $65 and said the offer was open till Saturday when he would probably be sold out. The informant knows that the item purchased was heroin for he is a heroin addict and used the heroin sold to him by Forrest and it cured his sickness. The items sold by pugliatti were also identified by the informant to be heroin for the same reason.

During the month of November 1974, I Plcm. JUMPER was working on a major heroin distribution frng from Phila to Fla. and while conducting a surviellance on the main distributor George TUCKER I did observe he and Doctor Forrest going to and from international airport on 2 occasions. On a third occasion our raid came off at the airport and TUCKER WAS arrest coming from Fla. with a pound of heroin. Record check revealed that FORREST has been arrested 14 time for various offenses. Due to all of the above I conducted a surviellance on the location 4439 Paul St. and observed PUGLIATTI come out of the residence at least five time on 1–13 and this afternoon on 1–14–77 engage in a conversation with persons waiting on corner, exchange something and go back into the residence 4439 Paul St. Due to my information and surviellance I am led to believe that Narcotics are stored and sold at the location 4439 Paul St. in violation of the controlled Sub act. (Exhibit G–5–1).

The defendant contends that the Court erred in denying his motion to suppress the marijuana, methamphetamines and heroin which the police seized in a search of the 4439 Paul Street residence pursuant to the search warrant. He alleges that the above quoted affidavit on its face does not support a finding of probable cause; that the

underlying facts upon which the affidavit was based were erroneous; and that the inclusion of the prior record of the defendant and the police officer's observation of defendant with George Tucker, an alleged distributor of drugs, was prejudicial.

■ It is elementary that information from an informant may form a basis for probable cause. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. McNally*, 473 F.2d 934 (3d Cir. 1973). In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court established a two-pronged test for determining the sufficiency of an affidavit upon which a magistrate may properly make a finding of probable cause:

> [(1)] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [(2)] some of the underlying circumstances from which the officer concluded that the informant . . . was "credible" or his information "reliable". *Id.* at 114, 84 S.Ct. at 1514. (footnote omitted).

*See Spinelli, supra,* 393 U.S. at 413, 89 S.Ct. 584.

■ Further, it has been held that if an informant has given information in the past leading to arrests or convictions, that fact is sufficient to establish his reliability without listing the specific arrests or convictions in the affidavit. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Singleton*, 439 F.2d 381, 384 (3d Cir. 1971); *United States v. Fina*, 405 F.Supp. 267, 271 (E.D.Pa.1975).

■ In this case the affidavit recited the informant's personal experiences in purchasing heroin from the defendant. The reasons propounded in the affidavit for the informant's credibility were that: (1) the information the informant had given to Officer Jumper over the course of five months had lead to five arrests, all of which resulted in confiscation of controlled substances;

and (2) Officer Jumper's personal surveillance corroborated the informant's account of the method of narcotics distribution from the 4439 Paul Street residence.[5] Therefore, we find that the affidavit, on its face, satisfies the dual requirements of *Aguilar* and *Spinelli* for a finding of probable cause.

Defendant also contends that the underlying facts upon which the affidavit was based were erroneous. This Court held a suppression hearing on June 24, 1977 at which Officer Jumper, the affiant, substantiated the details set forth in his affidavit.

■ The defendant further contends that the affidavit was prejudicial in that it included an allegation that defendant had been arrested fourteen times for various offenses. The Court has found no authority for the contention that mention of prior arrests renders such an affidavit defective. *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969),[6] advises that "affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial." The allegation of prior arrests was only one of many facts set forth in an affidavit which contained other facts supporting a finding of probable cause. The allegation that the defendant had prior arrests did not in any way prejudice this Court in arriving at its verdict. In this case the defendant was advised by the Court prior to the suppression hearing that in the event anything prejudicial was brought out in the suppression hearing he should withdraw his waiver of trial by jury or request another judge to try the case, and, when he was given this opportunity at the conclusion of the suppression hearing, he reaffirmed his determination to be tried by this Court sitting without a jury.

■ Finally, defendant contends that the affidavit was invalid because it recited two occasions when, in the course of a heroin distribution investigation, the affiant police officer personally observed the defendant going to and from the International Airport with a man later arrested at the Airport with a pound of heroin. While this observation in and of itself would not be a sufficient basis upon which to conclude that heroin was being kept and distributed at 4439 Paul Street, it is certainly a circumstance which might be considered in making a finding of probable cause.

Accordingly, we conclude that our denial of defendant's motion to suppress the physical evidence was proper and affords no basis upon which to grant a new trial.

*Motion to Suppress Defendant's Statement*

■ Defendant contends that the statement he made at 4439 Paul Street following his arrest should have been suppressed because he was never given his *Miranda* warnings. At the suppression hearing, Officer Jumper testified that he read the defendant the warnings from a card used for that purpose by the Philadelphia Police Department. (Exhibit G–S–2). This testimony was corroborated by Lieutenant Wilson, an officer who observed Jumper giving defendant his *Miranda* warnings. There was ample credible testimony that the warnings were given.

While we have not discussed herein all of the contentions which were raised by defendant, we find that none of them, either singly or collectively, has sufficient substance to merit any further discussion as a basis for granting a motion for arrest of judgment, judgment of acquittal or new trial.

**5.** *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) holds that probable cause may be established by an informant's tip which is verified by independent police observations. *United States ex rel. Kislin v. New Jersey*, 429 F.2d 950 (3d Cir. 1970).

**6.** Quoting *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); see *United States v. McNally*, 473 F.2d 934 (3d Cir. 1973).