**UNITED STATES of America**

v.

**Milton Edward BAILEY, Defendant.**

**Crim. A. No. 76–123.**

United States District Court,
W. D. Pennsylvania.

Sept. 7, 1977.

---

John Paul Garhart, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Michael A. Della Vecchia, Evashavik, Capone & Evans, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER

TEITELBAUM, District Judge.

### FACTS

On June 9, 1976, the defendant, Milton Edward Bailey, was indicted by a Federal Grand Jury sitting in the Western District of Pennsylvania. The two-count indictment, alleging violations of Sections 2, 2113(a) and 2113(d) of Title 18, United States Code, charged the defendant with the February 6, 1975, armed robbery of the branch office of the Colony Federal Savings and Loan Office in Aliquippa, Pennsylvania.

Palm prints taken from the teller's counter at the bank were determined to be those of John Bernard Stewart. Stewart was indicted and on April 29, 1976, pursuant to a plea bargain gave a written statement to the Federal Bureau of Investigation detailing the robbery and naming Milton Edward Bailey as his accomplice.[1]

A major issue at trial was identification. Four of the eyewitnesses to the robbery did not identify the defendant at trial and had

---

1. Ms. Caroline Thomas and Mrs. Regina Dorsey both testified that John Bernard Stewart was a friend of Milton Bailey. Tr. p. 160 and 241.

made no pretrial photographic identification.[2] Two other eyewitnesses testified that they had picked the defendant's picture out of a pretrial photographic display and, in Court, they were only able to make a qualified identification of the defendant.

John Bernard Stewart, who at the time of his guilty plea to the instant robbery had agreed to testify for the government, was called, out of the presence of the jury, as a witness. However, Stewart refused to testify despite an order of the Court to do so. In view of Stewart's refusal, the government moved, pursuant to Rule 804 of the Federal Rules of Evidence, to have Stewart's written statement admitted into evidence. The Court granted both counsel a day's recess to research the question of admissibility. After argument, the Court admitted the statement under Rule 804(b)(5). Thereafter, defense counsel, having previously been given a copy of the statement, was given a three-day recess to prepare to meet the statement and was told additional time would be given if needed.[3]

The detailed statement of John Bernard Stewart, which was read into evidence by Special Agent Preston of the Federal Bureau of Investigation, alleged that Stewart and the defendant, Bailey, using the defendant's girlfriend's car drove to Aliquippa from Washington, D.C. the morning of the robbery, searched Aliquippa for an opportune bank to rob, committed the robbery at Colony Federal, drove to Pittsburgh, Pa. where they split up and met again in Washington, D.C., to divide the proceeds of the robbery.

Counsel, on cross-examination, was permitted to impeach Stewart by questioning Agent Preston about Stewart's prior criminal record and motive to lie.[4]

Upon the foregoing testimony, the jury returned a verdict of guilty as to both counts of the indictment. Defendant has now moved for a new trial and/or judgment of acquittal.

## ISSUE

The issue to be decided is whether the out-of-court statement of Stewart was properly admitted into evidence as a hearsay exception under Rule 804(b)(5) of the Federal Rules of Evidence, and if so, whether its admissibility comports with the Sixth Amendment right to confront one's accusers.

## EVIDENTIARY ADMISSIBILITY

Rule 804(b)(5) formulates a new "trustworthiness" exception to the hearsay rule. It provides:

"(b) The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(5) Other exceptions: A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant."

▮ The first question to be asked is whether Stewart was "unavailable" within

---

**2.** Tellers Farinelli and Cavendar were ordered to lie face down on the floor and they never even glimpsed the robber standing near the manager's desk. Likewise, the customer, Mr. Sylvester, was struck on the head from behind and had only the briefest opportunity, as he fell from his chair onto the floor, to see his assailant's face.

**3.** Tr. p. 227.

**4.** Tr. p. 277–78.

the ambit of 804(b)(5). The answer to this question is easily provided by 804(a)(2) which states:

"(a) Definition of unavailability.

'Unavailability as a witness' includes situations in which the declarant– (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court do do so."

In the case *sub judice*, Stewart refused to testify in spite of an order of Court. Stewart, therefore, was clearly unavailable for purposes of application of the Federal Rules of Evidence in general and 804(b)(5) in particular.

We now turn to an examination of the specific requirements for admissibility under 804(b)(5).

The first requirement is that the statement offered be evidence of a material fact. All parties concede that identity was a material issue at trial.

■ The second requirement is that the statement be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. This requirement was satisfied because no other person was able to provide the specific evidence as to identity that was furnished via Stewart's statement.

■ The third requirement is that the general purpose of the Rules and the interests of justice will be best served by admission of the statement into evidence. Stewart testified in his statement that defendant and he were driving the car that belonged to the mother of defendant's girlfriend. That particular car was in Aliquippa at the time of the robbery and those persons who robbed the bank used that car to flee.[5] Such a corroborating circumstance serves to guarantee the trustworthiness of the statement and mandates its admission in the interests of justice.

■ Additionally, the statement cannot be admitted under 804(b)(5) unless the adverse party knows of it sufficiently in advance of trial to be provided with a fair opportunity to meet it. The purpose of this notice requirement is to give the adverse party an adequate opportunity to prepare to contest the use of the statement. H.Conf.Rep.No. 93–1597, 93rd Cong.2d Sess. (1974). Although notice was not given to defense counsel prior to trial, the trial was recessed for three days to enable counsel to prepare to meet Stewart's statement and additional time was made available to him if necessary. The failure of pretrial disclosure occurred because Stewart's "unavailability" did not arise until trial when he refused to testify in defiance of this Court's Order. The government could not know whether Stewart would be unavailable to testify until after his refusal during trial. Thus, the notice requirement of 804(b)(5) was fulfilled in both spirit and purpose by recessing the proceedings. It is significant to note that defendant does not claim three days was insufficient for investigation or that he was prejudiced in any manner by the procedure utilized. Under the circumstances *sub judice*, Stewart's statement was properly admitted under Rule 804(b)(5).

## SIXTH AMENDMENT RIGHT OF CONFRONTATION

The Confrontation Clause of the Sixth Amendment provides "that in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

■ The Constitutional Right of Confrontation is distinct from the hearsay rules of the Federal Rules of Evidence. As stated in *California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489:

"While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is

---

**5.** One of the witnesses made a positive identification of the car as being the getaway vehicle. Tr. p. 134.

nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception."

Thus, admissibility under 804(b)(5) does not ipso facto satisfy the Confrontation Clause. Measurement must be by the separate Constitutional yardstick of the Sixth Amendment.

"The particular vice that gave impetus to the confrontation claim was the practice of trying defendants on 'evidence' which consisted solely of ex parte affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact. Prosecuting attorneys 'would frequently allege matters which the prisoner denied and called upon them to prove. The proof was usually given by reading depositions, confessions of accomplices, letters, and the like; and this occasioned frequent demands by the prisoner to have his "accusers," i. e. the witnesses against him, brought before him face to face.'" *California v. Green, supra,* at 156–57, 90 S.Ct. at 1934.

Thus, the central theme of the Confrontation Clause is that a witness be available at trial for cross-examination by the defendant.[6]

"Availability" for cross-examination is impliedly codified by Rule 804(a) of the Federal Rules of Evidence. However, as previously indicated, the Confrontation Clause and evidentiary hearsay rules are not completely symmetrical. Therefore the issue arises whether under the circumstances of this case Stewart can be deemed available to testify for purposes of the Constitution even though the Federal Rules view Stewart as being unavailable. In other words, do the Federal Rules articulate a standard of availability which is of Constitutional dimension?

The first factor to be considered is that Stewart's refusal to testify on behalf of the government was motivated by a desire to help the defendant.[7] Stewart had already pled guilty to the instant robbery and therefore no longer retained a Fifth Amendment Privilege.[8] There can be no other conclusion but that Stewart's refusal to testify despite an Order of Court was prompted by a desire to protect the defendant. *Cf. Motes v. United States,* 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900).

A second factor to be considered is the potential efficacy of any cross-examination. Such examination would have been detrimental to defendant's case. This fact was

**6.** The right of Confrontation is limited where there has been a prior opportunity for cross-examination by the defendant. *California v. Green, supra; Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *United States ex rel. Oliver v. Rundle,* 417 F.2d 305 (3d Cir. 1969). However, in the case *sub judice* defendant at no point in time had an opportunity to cross-examine Stewart. While *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) recognized that the Confrontation Clause was violated by the introduction of a confession against the defendant made out of court by one of his codefendants who did not testify in Court and was not previously cross-examined by defendant, that decision is not presently controlling. First, the parties in *Brookhart* had stipulated to a Confrontation Clause violation and therefore the Court focused almost completely on whether or not defendant had waived his Constitutional right.

Thus, the adversary process was not utilized to arduously contest the premise of a violation. Secondly, the government in *Brookhart* had not made as exhaustive an attempt to present the codefendant in Court as was done by the government *sub judice.* Although lodged in an Ohio reformatory at the time of trial, the codefendant in *Brookhart,* who had previously entered a guilty plea after being indicted with defendant, was not called to testify in person at the Ohio Court of Common Pleas trial. *Brookhart, supra* at 2, 86 S.Ct. 1245.

**7.** Stewart and the defendant were friends. See footnote 1.

**8.** This Court was cognizant at trial of the possibility that Stewart might incriminate himself in other crimes and intended to restrict the scope of questioning accordingly. Tr. p. 225.

admitted by counsel for defendant at trial when he stated: "If I call him for cross examination, I am making out the case for the government."[9] The only possible effective cross examination would have had to focus on impeachment. Impeachment as to Stewart's prior criminal record was permitted during the cross-examination of Agent Preston.[10] Therefore, defendant had the benefit of cross-examination in substance to the extent that it could have reasonably aided his cause.

█ Under this factual mosaic, defendant's right of confrontation was satisfied. The government made every effort to have Stewart testify at trial. The Court ordered Stewart to testify. Stewart was plainly protecting his friend, the defendant. Even had he taken the stand, Stewart's testimony would have reinforced the government's case to the detriment of the defendant. To the extent that cross-examination of Stewart could reasonably have been beneficial to the defendant, the benefit was obtained by the questioning of Agent Preston as to Stewart's plea bargain and prior criminal record. The framers of the Constitution could not have envisioned carrying the Sixth Amendment to the unwarranted extent disclosed by these circumstances.

Even were the Federal Rules definition of unavailability constitutionally mandated, this is the type of situation where reliability is so firmly established as to satisfy the Confrontation Clause via the policy basis of the hearsay exception itself.

Although the Confrontation Clause and hearsay rules are conceptually distinct, the Supreme Court has refused to render an opinion indicting all forms of hearsay as violative of the Confrontation Clause. The Court in *Bruton v. United States*, 391 U.S. 123, 128, 88 S.Ct. 1620, 1624, 20 L.Ed.2d 476 (1968) stated:

> "There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause."

The hearsay exception *sub judice* is clearly as reliable as other forms of hearsay which satisfy the Confrontation Clause absent any opportunity for cross examination. *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed.2d 409 (1895) (Dying Declaration); *United States v. Kelly*, 349 F.2d 720, 770 (2d Cir. 1965) (Past Recollection Recorded). If dying declarations may be admitted despite the Confrontation Clause, so should the reliable hearsay of Stewart, especially where Stewart would be deemed "unavailable." See Vol. 4, *J. Weinstein, Evidence*, 800–24 & 25.

## CONCLUSION

We have examined defendant's other contentions and find them to be without merit. Defendant's motion for a new trial and/or judgment of acquittal is therefore denied. An appropriate Order will issue.