**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**THEODORE JOSEPH and LEROY DAVIS, Defendants**

Criminal No. 89-139

District Court of the Virgin Islands

Div. of St. Thomas and St. John

July 28, 1992

TERRY HALPERN, ESQ., St. Thomas, V.I., *for plaintiff*

KWAME O. MOTILEWA, ESQ., St. Thomas, V.I., *for defendant Joseph*

ROBERT KING, ESQ., St. Thomas, V.I., *for defendant Davis*

McGLYNN, *Judge*

## MEMORANDUM

### FACTS AND PROCEDURAL HISTORY

Before the court are defendants Theodore Joseph and Leroy Davis' Motions for a Judgment of Acquittal or in the alternative for a New Trial. This case involved the surveillance and subsequent raid of a suspected drug-dealing location. On September 6, 1989, agents and officers from the Virgin Islands Narcotics Strike Force ("Strike Force") and the Virgin Islands Police Department conducted a surveillance of the Quality Grain and Feed Shop ("Feed Shop") on the island of St. Thomas. After illegal drug transactions

were observed, a raid ensued during which arrests were made and drugs and weapons were seized.

A four-count information was filed in the District Court of the Virgin Islands, Division of St. Thomas and St. John, charging Theodore Joseph, Leroy Davis, and Vernon Nesbitt with conspiracy to possess cocaine with intent to distribute (Count I), 21 U.S.C.A. § 846 (West 1981 & Supp. 1992), possession of cocaine with intent to distribute (Count II), 21 U.S.C.A. § 841(a)(1) (West 1981), knowing use of a firearm, a submachine gun, during and in relation to a drug crime (Count III), 18 U.S.C.A. § 924(c) (West 1976 & Supp. 1992), and knowing use of another firearm, a semi-automatic pistol, during and in relation to a drug crime (Count IV). Id. At the ensuing jury trial, conducted December 11–14, 1989, Joseph and Davis were convicted on all counts, and Nesbitt was found not guilty. The prosecution's case was based upon the physical evidence seized as well as testimony from the agents and officers who were involved in the surveillance operation.

Following the trial Joseph's counsel obtained police reports and affidavits from an entirely separate case. This material, if accurate, tends to show that at the time the agents claimed to be observing the defendants they instead were at a different location involved in another investigation. Consequently, defendants Joseph and Davis filed the present motions contending that the government's failure to disclose the information contained in the reports of the unrelated investigation violates the Brady rule. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Despite the pending motions, sentences were imposed on March 7, 1989. Defendants appealed the sentences but the Court of Appeals ruled that it did not have jurisdiction because of the undecided motions. United States v. Davis, 924 F.2d 501 (3rd Cir. 1991).

Davis' only contention in the present motion is that by reason of a Brady violation he is entitled to a new trial. Joseph raises that issue as well as several others: (1) the Government's non-disclosure of agents' reports and affidavits violated the Sixth Amendment and the Jencks Act; (2) the evidence at trial was insufficient to support his conviction for conspiracy; (3) the evidence at trial was insufficient to support his conviction as to Counts III and IV; (4) the trial judge erred in sentencing appellant pursuant to 18 U.S.C.A. § 924(c) (West 1976 & 1992); and (5) the government's failure to disclose the deputy marshall as a witness violated Joseph's due process of law.

Each issue will be dealt with in turn.

## DISCUSSION

### (1) *The Brady violation claim*

After the trial, but before sentencing, Joseph's counsel had the opportunity to view the prosecutor's case file for an entirely separate matter, United States of America v. Carlton Lee, Criminal No. 89-165 (D.V.I. filed Oct. 31, 1989). In doing so, he discovered that in connection with that case, Agents Olive and Charleswell had written in reports and sworn in affidavits that on the same day as the arrests in the present case, from approximately 5 p.m. to 6:30 p.m., they were conducting another surveillance in a different location from the present case. (Def.'s Mem. of Law in Supp. of Mot. for New Trial, Ex. 2A–2C, 3). This contradicts Agent Olive's trial testimony that the surveillance in the present case began at approximately 6 p.m. to 6:30 p.m. The basis for defendants' Brady violation claims is the prosecution's failure to produce these documents which could have been used to impeach Agents Olive and Charleswell at trial.

Before analyzing defendants' claim, it is important to note that Agent Olive's affidavit in the Lee case was a matter of public record on file in the District Court from October 31, 1989 and therefore accessible and available to Davis and Joseph six weeks before trial.

██ In order for there to be a Brady violation, the prosecution must know or be expected to know of the existence of the evidence in question. In United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), the Supreme Court stated "that a conviction obtained by the *knowing* use of perjured testimony is fundamentally unfair, and must be set aside." Id. at 103 (emphasis added). In Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed. 791 (1935), the Court stated that it is a denial of due process when a conviction is obtained "through a *deliberate* deception of [the] court and jury by the presentation of testimony *known* to be perjured." Id. at 112 (emphasis added). While in United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991), the Third Circuit held that counsel's lack of knowledge of the evidence claimed to be Brady material is not a sufficient defense of an alleged Brady violation, this rule has been applied only to situations where the prosecutor should have

277

known or would be expected to know about such information.[1] Contra United States v. La Rouche Campaign, 695 F.Supp. 1265, 1280 (D. Mass. 1988) (prosecutor had duty to inspect all files in U.S. Attorney's Office in that district).

While the document in dispute was in the possession of the same prosecutor who handled this case, the Lee case was disposed of by a plea of guilty subsequent to the Davis/Joseph trial and the prosecutor had viewed the agents' reports only to send them to Lee's attorney pursuant to a discovery request. Significantly, the time of the surveillance was never relevant to the prosecution's case. The prosecution was not aware of the inconsistency in the reports until it was pointed out in this motion. When finding a Brady violation, the Supreme Court is concerned with the intentional and wilful deception of the court rather than the type of situation at hand. In the circumstances of this case, the court is not persuaded that the prosecution should have known of the evidence, thereby effecting a Brady violation.

■ But even assuming a Brady violation in this case, the court is convinced that the harmless error doctrine applies. The Constitution entitles a criminal defendant to a fair trial, not a perfect one. Delaware v. Van Arsdall, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). In Van Arsdall, the Supreme Court recognized that some constitutional errors are so unimportant and insignificant that they may be deemed harmless and therefore reversal is not required. For a constitutional error to be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt" after viewing the record as a whole. Id. at 681; Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967). A new trial shall be granted if it can be said that the error may have contributed to the guilty verdict. Van Arsdall, 475 U.S. at 683. The purpose of this standard is to keep the focus of the trial on the factual decision of the defendant's guilt or innocence rather than focusing on every error at trial, no matter how trivial. Id. at 684 (citing United States v. Nobles, 422 U.S. 225, 230, 95 S. Ct. 2160, 2166, 45 L. Ed. 2d 141 (1975)).

---

[1] For example, in Perdomo, though the prosecutor had not known about a witness's prior criminal record, the Third Circuit held that his failure to effectually attempt to verify such a criminal history "amounted to conduct unworthy of the United States Attorney's Office". 929 F.2d at 971.

■ When a defendant claims there was a constitutionally im-
proper denial of the opportunity to impeach a witness, the court
must subject the damaging potential of the cross-examination to
the reasonable doubt test. Several factors are considered in deter-
mining if the error is harmless: 1) importance of the witness' testi-
mony in the prosecution's case; 2) whether the testimony was
cumulative; 3) presence or absence of corroborating or contradic-
tory evidence; 4) the extent of cross-examination otherwise permit-
ted; and 5) the overall strength of the prosecution's case. Id.

■ When cumulative evidence proves guilt or where the evi-
dence in question is unimportant in relation to the rest of the evi-
dence considered at trial, errors have been found harmless. Yates v.
Evatt, 111 S. Ct. 1884, 1893 (1991); Harrington v. California, 395 U.S.
250, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969).

Turning to the facts of the case, once the record is viewed as a
whole, it is evident that the exclusion of the evidence at trial was a
harmless error. Had the prosecutor been aware of the contradiction
in the reports as to the times of the surveillances, he could have
shown through the testimony of Agents Olive and Charleswell's
supervisor that they had been mistaken about the time by one hour,
that the surveillance of the Feed Store began between 7 p.m. and
7:30 p.m. rather than 6 p.m. and 6:30 p.m. As the director of the
operation, Gastin E. Tuckett, testified, the agents left the Strike
Force for the Feed Store somewhere after 7 p.m. (Mot. For New
Trial Tr. at 205). Agent Olive testified he saw the first drug transac-
tion take place between 6:30 p.m. and 6:45 p.m. and the next one
fifteen minutes later. (Id. at 111). Being mistaken by one hour, he
would have seen the first transaction between 7:30 p.m. and 7:45
p.m. and then the last around or before 8:00 p.m. This would be
consistent with the undisputed testimony of all the witnesses that
the arrest did not take place until after 8 p.m. (Trial Tr. Vol. I at 40,
89; Mot. For New Trial Tr. at 203). The cross-examination of the
witnesses at trial was extensive, in particular regarding what was
seen and inconsistencies in their testimony. Furthermore, nobody
questions the fact that when the raid was made, drugs and
weapons were seized at the scene. (Mot. For New Trial Tr. at 209).

■ As the evidence supports the notion that Agents Olive and
Charleswell were merely mistaken by one hour as to the time the
surveillance began, and the evidence presented at trial indisputa-
bly shows that Davis and Joseph were present at the scene in con-

279

trol of drugs and automatic weapons, I am persuaded that the failure of the government to search for and disclose the impeaching evidence was at best harmless error. Had this evidence been available along with the explanation of the inconsistency it would have had very little if any impact on the decision of the jury.

## (2) *The Sixth Amendment and the Jencks Act claims*

Joseph also contends that he was denied the right to cross-examine and impeach the testimony of Agents Olive and Charleswell by the prosecution's failure to disclose the Agents' handwritten reports and sworn affidavits in the Lee matter, and that this right is guaranteed by the Sixth Amendment and the Jencks Act,[2] 18 U.S.C.A. § 3500 (West 1985).

■ The Confrontation Clause of the Sixth Amendment guarantees a defendant the right to confront his accusers at trial.[3] U.S. Const. amend. VI. The Amendment was passed to do away with the past practice of trying defendants on evidence such as depositions and ex parte affidavits, thereby "denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact." United States v. Bailey, 439 F.Supp. 1303, 1307 (W.D. Pa. 1977), rev'd on other grounds, 581 F.2d 341 (3d Cir. 1978). The Confrontation Clause is a protection of the defendant's trial rights, Pennsylvania v. Ritchie, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987), and the privilege is satisfied if the defendant is given the opportunity to cross-examine adverse witnesses. United States v. Jones, 404 F.Supp. 529 (E.D. Pa. 1975) (citing Government of Virgin Islands v. Aquino, 378 F.2d 540, 548 (3d Cir. 1967)), aff'd, 538 F.2d 321 (3rd Cir. 1976); see also United States v. Gifford, 684 F.Supp. 125 (E.D. Pa. 1988) (privilege is satisfied if witness testifies under oath & jury has opportunity to see demeanor of witness), aff'd sub. nom. United States v. Kelly, 892 F.2d 255 (3d Cir. 1989). The clause only protects trial rights, it does not compel the pretrial production of information the defense might find useful. Jones, 404 F.Supp. at 529.

---

[2] The court notes that the Jencks Act has been incorporated into the Federal Rules of Criminal Procedure as Rule 26.2 (1980).

[3] "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI.

■ Since both Agents Olive and Charleswell were subjected to extensive cross-examination, defendant's argument is without merit.

■ The Jencks Act is triggered after a witness called by the United States has testified on direct examination, and the defendant has made a timely motion to the court to order the production of a statement of that witness that is in the government's possession. See Fed. R. Crim. P. 26.2(a).[4] If a timely motion is not made at trial, defendant has waived his right to relief based on the failure to receive that statement. United States v. Petito, 671 F.2d 68 (2d Cir. 1982), cert. denied, 459 U.S. 824, 103 S. Ct. 56, 74 L. Ed. 2d 60 (1982); United States v. Carter, 613 F.2d 256 (10th Cir. 1979), cert. denied 449 U.S. 822, 101 S. Ct. 81, 66 L. Ed. 2d 24 (1980).

■ To suggest that under the Jencks Act the government is required to turn over all reports prepared by the testifying agent in all unrelated cases is simply absurd.

(3) *The suppression of the evidence as to conspiracy*

■ Joseph claims that the record in this matter is totally devoid of any evidence which tends to support the government's charge of conspiracy, and is therefore insufficient to support his conviction. In considering such a claim, we must credit every inference that could have been drawn in the government's favor, United States v. Bagaric, 706 F.2d 42, 64 (2d Cir.), cert. denied, 464 U.S. 840, 104 S. Ct. 133, 78 L. Ed. 2d 128 (1983), and affirm the conviction so long as the jury might fairly have concluded defendant was guilty beyond a reasonable doubt. United States v. Taylor, 464 F.2d 240, 244–45 (2d Cir. 1972). These principles apply whether the evidence being reviewed is direct or circumstantial. See Glasser v. United States, 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 2d 680 (1942).

The Third Circuit has held that "a single conspiracy is proved when there is evidence of a large general scheme and of aid given by some conspirators to others in aid of that scheme." United States v. Reyes, 930 F.2d 310, 313 (3d Cir. 1991) (citing United States v. Kenny, 462 F.2 1205, 1216 (3d Cir.), cert. denied, 409 U.S. 914, 93 S.

---

[4] Rule 26.2(a) reads:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order . . . [to be produced] any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

Ct. 233, 34 L. Ed. 2d 176 (1972)). Here, giving credit to every inference that could have been drawn in the government's favor, the finding of a conspiracy by the jury was not in error.

 The intent to distribute cocaine base crack can be inferred merely from the large quantity of drug present. *United States v. Gooding*, 695 F.2d 78 (4th Cir. 1982); *United States v. Grayson*, 625 F.2d 66 (5th Cir. 1980); *United States v. Forrest*, 434 F. Supp. 1131, 1134 (E.D. Pa. 1977), aff'd, 573 F.2d 1302 (3d Cir. 1978). Joseph's participation in the conspiracy can be inferred from his property interest and license to operate the Feed Store from which the drugs were seized, (Trial Tr. Vol. II at 69–71), the fact that both he and Davis were seen by Agent Olive participating in drug transactions at that location, (Id. Vol. I at 108–11), he was seen leaving the crime scene with defendant Davis, (Id. at 38–39), and he had a firearm on his person at the time of the arrest. (Id. at 46). From these facts, the court cannot say that the jury was wrong to infer that Joseph did give aid in furtherance of the general scheme to distribute cocaine and that there was in fact a conspiracy.

(4) *The sufficiency of the evidence as to the firearms charges*

Counts III and IV involve the knowing use of two firearms, a submachine gun and a semi-automatic pistol, during and in relation to a drug crime, both violations of 18 U.S.C.A. § 924(c) (West 1976 & Supp. 1992). Joseph contends that the mere presence of the pistol on his person does not trigger the statute, and that the submachine gun, being inside Davis's vehicle, was not available to him. Consequently, because he did not "use" either of the firearms, his conviction on both counts is unsubstantiated.

 It has been held that a weapon need not actually be handled or brandished to be "used" under the terms of § 924(c). *United States v. Theodoropoulos*, 866 F.2d 587, 596 (3d Cir. 1989). When the weapon's presence protects or emboldens the actor by its mere presence and availability, the firearm can be deemed "used" for purposes of § 924(c). Id. (citing *United States v. Steward*, 779 F.2d 538, 540 (9th Cir. 1985), cert. denied, 108 S.Ct. 192, 98 L. Ed. 2d 144 (1987)). As long as the government establishes some relation between the firearm and the crime, a conviction under this section can stand. Id. Such a relation can be found if the circumstances indicate that defendant intended to have the firearm available either for the transaction or in the event it would be necessary for an

escape. Theodoropoulos, 866 F.2d at 597, (quoting United States v. Feliz-Cordero, 859 F.2d 250, 254 (2d Cir. 1988)); Williams ex rel. Williams v. Bowen, 859 F.2d 255 (2d Cir. 1988), (quoting S. Rep. No. 225, 98th Cong., 2d Sess. 1, 314 n.10 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3492 n.10)).

■ As to the pistol found on Joseph's person, it is not disputed that this firearm was present at the crime scene. Moreover, the fact that Joseph never had an opportunity to brandish or discharge the pistol does not mean that he did not "use" it. Joseph participated in the possession of illegal drugs with intent to distribute. He used his gun in that it increased his likelihood of success. See United States v. Moore, 580 F.2d 360 (9th Cir.), cert. denied, 439 U.S. 970, 99 S. Ct. 463, 58 L. Ed. 2d 430 (1978). The jury could properly infer that the pistol was "used" in this situation.

■ With regard to the submachine gun inside Davis's vehicle, the jury could infer that the weapon was purposefully at the crime scene, and not in the vehicle by happenstance. Its "use" consisted of its availability in a situation where the conspirators needed to escape quickly and in the process defend themselves. Again, the jury could properly infer that the submachine gun was "used" in this situation.

Therefore, the conviction as to Counts III and IV stands.

(5) *The defendant Joseph's sentence on Count III*

■ Joseph argues that the imposition of sentence under Count III was improper. As the jury's finding of a conspiracy was reasonable, Davis' acts are to be attributed to Joseph. Taxin v. Food Fair Stores, 287 F.2d 448 (7th Cir.) (conspirators are liable for the acts of other conspirators if acts are done to further general scheme), cert. denied, 366 U.S. 930, 81 S. Ct. 1651, 6 L. Ed. 2d 389 (1961). Accordingly, Joseph is held accountable for the presence of the submachine gun, and the sentence was proper.

(6) *The role of the Deputy U.S. Marshal*

Deputy U.S. Marshal Carlton Dowe had been assigned to attend the jury in this case but when one of the government's witnesses testified that Dowe had been present at the raid on the Feed Shop he was immediately relieved of the jury assignment by the court. Dowe was not called as a witness and the jury was not in his charge at any time during the course of their deliberation.

■ The Supreme Court has declared that there is inherent prejudice to a criminal defendant when a county sheriff serves both as a key prosecution witness and as a bailiff at trial.[5] Gonzales v. Beto, 405 U.S. 1052, 92 S. Ct. 1503, 31 L. Ed. 2d 787 (1972). In Turner v. Louisiana, 379 U.S. 466, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965), the Court reversed the judgment without an actual showing of prejudice when two deputy sheriffs served as both principal witnesses for the prosecution and jury custodians. Because the official duties of a jury custodian is likely to influence his credibility in the jury's eyes, there is a potential for prejudice if he participates in the presentation of the prosecution's case. Johnson v. Wainwright, 778 F.2d 623, 626 (11th Cir. 1985); see Gonzales, 405 U.S. at 1054–6, 92 S. Ct. at 1504–5. However, his particular role in the proceeding determines whether a per se rule of reversal is warranted. Johnson, 778 F.2d at 626. When his contact with the jury or his participation in the case is so minimal such that the impact on the jury's deliberations is de minimus, actual prejudice must be shown. Id.

■ While Deputy Marshal Dowe participated in the raid at the Feed Shop, he was not called as a witness, and there has been no allegation that the jury even knew of his role in the arrest of the defendants. A per se rule of reversal is therefore unwarranted. As Joseph has made no showing of actual prejudice, his claim will be rejected.

For the reasons stated above the motion will be denied.

## ORDER

AND NOW, this 28th day of July, 1992, upon consideration of the Motions For A Judgment Of Acquittal Or In The Alternative For A New Trial filed on behalf of the defendants Theodore Joseph and Leroy Davis it is

## ORDERED

that the motions are DENIED.

---

[5] This is analogous to the present situation where a Deputy U.S. Marshall served as a potential witness and jury custodian.