## Case No. 10,116.

### NELSON et al. v. UNITED STATES.

[Pet. C. C. 235.][1]

Circuit Court, D. Pennsylvania. April Term, 1816.

NON-IMPORTATION LAWS—CONDEMNATION OF VESSEL — SUSPICIOUS CIRCUMSTANCES — EVIDENCE— LETTERS ROGATORY—INTERROGATORIES ACCOMPANYING COMMISSION—JUDGMENT AGAINST SURETIES AFTER AFFIRMANCE OF DECREE OF CONDEMNATION.

1. Condemnation of a vessel, and part of her cargo, for a breach of the non-importation laws.

2. However positive evidence may be, its effects will be done away, by suspicious circumstances.

[Cited in The John Griffin, Case No. 7,348.]

3. The circuit court will issue letters rogatory, for the purpose of obtaining testimony, when the government of the place where the evidence is to be obtained, will not permit a commission to be executed.

Form of letters rogatory (note).

4. If all the interrogatories which accompany a commission, are substantially, although not formally answered, it is sufficient; and this principle applies as well to evidence obtained under letters rogatory, as to answers under a commission.

5. After affirmance of the sentence of condemnation of the district court, for a breach of the revenue or non-importation laws, the court will, forthwith, on motion, give judgment against the claimant and his sureties, on the bond given upon the delivery of the cargo to him, at the appraised value.

[Cited in The Wanata v. Avery, 95 U. S. 616; U. S. v. Ames, 99 U. S. 41.]

[Appeal from the district court of the United States for the district of Pennsylvania.]

This was an appeal from the district court of Pennsylvania, where a pro forma decree, upon an information filed by the district attorney, had been entered in favour of the

---

1 [Reported by Richard Peters, Jr., Esq.]

United States. The information was founded upon a breach of the non-importation law, for importing into the United States, from the Havanna, a cargo of rum, sugar, coffee, molasses and copper; the growth, produce or manufacture of a British colony. The copper, molasses and sugar, were claimed by Joseph E. Tatem as his property; the rum, was claimed by Abbott, for himself and Nelson, the master and owner of the vessel; and the vessel called the Perseverance, was claimed by Nelson.

Ingersoll & Peters, for claimants.

C. J. Ingersoll, Dist. Atty., for the United States.

WASHINGTON, Circuit Justice. As there is no claim interposed for the coffee, the sentence of the district court, must of course be affirmed. As to the copper, molasses and sugar, claimed by Joseph E. Tatem, his ownership in the same, is made out by all the ordinary documentary proof, and there is not the slightest evidence in the cause, to induce a suspicion that these articles were the growth or manufacture of Great Britain or of any of her colonies or her possessions. The decree, therefore, as to these articles, must be reversed. The only question, which was seriously contested at the bar, related to the ninety-seven hogsheads of rum, claimed by Abbott, for himself and Nelson. For the United States it was insisted, that this article was manufactured in one of the British West India islands, and on the other it is asserted to be of Spanish origin. To establish the fact, on the one side, and on the other, a number of witnesses have been examined; all or most of whom, professed themselves to be well acquainted with the flavour and strength of rum made in the British islands. The number of witnesses was nearly equally divided, one-half pronouncing the rum to be of British origin, the other half declaring a different opinion; and the latter have relied for their support, not only upon the flavour, but upon the strength of the spirits, and upon the quality and make of the casks containing the same. In aid of the testimony given in favour of the claim, we have the depositions of sundry witnesses, taken at the Havanna, under letters rogatory awarded by this court.[2] These witnesses swear most positively; that the ninety-seven hogsheads of rum, shipped on board the Perseverance, were manufactured at the Havanna, by Solere, one of the witnesses, and sold to Medina, another of the witnesses; and by him sold to Nelson and delivered on board the Perseverance. To these depositions, objections have been made, the chief of which is, that all the interrogatories were not answered. To this it has been answered, that they are all substantially though not formally answered. If this be the case, this court have decided in former cases, that it is sufficient, even where the depositions were taken under commissions, and consequently by persons appointed by and acting under the authority of this court. The reason for dispensing with a strict performance of the duty imposed upon those who take the depositions applies, a fortiori, in a case where a foreign government refuses to suffer a commission to be executed within its jurisdiction, and deputes persons, appointed by itself, to take the depositions. This being the policy of the Spanish government, this court, instead of sending a commission in the present case, was induced to send letters rogatory, which have been executed by persons appointed by the governor of Cuba. In such a case, where the business is taken out of the hands of persons appointed by the court, the ends of justice seem to require a departure, in some degree, from the ordinary rules of evidence. To what extent this departure should go, has never yet been decided in this court, and it is not necessary at present to lay down the limitation; because I am satisfied, that if the cause rested solely upon the testimony of the witnesses examined to prove the origin of the rum; the weight of evidence, to which there can be no exception, is in favour of the point, contended for by the claimant, that it was not manufactured in a British island. But if the evidence to establish this point were much stronger than it is, the case is crowded with circumstances of suspicion, too violent to be overcome. In the first place, there was not on board of this vessel at the time of seizure, any of the ordinary muniments of property, either in Abbott. in Nelson, or any other person. There was no invoice, bill of lading, bill of

[2] A commission, in the usual form. had been issued out of the district court to Havanna, but the authorities there prevented its execution. Any attempt to take testimony under it, was deemed an interference with the rights of the judicial tribunals there. Letters rogatory, according to the form and practice of the civil law, were issued, and the testimony was obtained. The following is a copy of the letters rogatory: United States. District of Pennsylvania. Sct. The President of the United States, to Any Judge or Tribunal, Having Jurisdiction of Civil Causes at Havanna, Greeting: Whereas a certain suit is pending before us in which John D. Nelson, Henry Abbott and Joseph E. Tatem, are the claimants of the schooner Perseverance and cargo. and the United States of America are the defendants; and it has been suggested to us, that there are witnesses, residing within your jurisdiction. without whose testimony, justice cannot completely be done between the said parties. We therefore request you. that in furtherance of justice, you will, by the proper and usual process of your court. cause such witness or witnesses, as shall be named or pointed out to you by the said parties, or either of them. to appear before you, or some competent person, by you for that purpose to be appointed and authorised, at a precise time and place by you to be fixed. and there to answer on their oaths and affirmations, to the several interrogatories hereunto annexed; and that you will cause their depositions to be committed to writing, and returned to us under cover, duly closed and sealed up together with these presents. And we shall be ready and willing to do the same for you in a similar case when required. Witness, &c.

parcels, accounts, or paper of any kind; nor has any attempt been made to account for the absence of these documents. It was contended, that the title of Nelson to the rum, was proved by the evidence of Solere and Medina; and that his possession is sufficient to establish his title. Still, however, this does not account for the want of the ordinary documentary proof of property; and consequently does not relieve the case, from the suspicion which this circumstance fixes upon it. If the transaction was fair and legal; if the rum was really manufactured in a Spanish island; what reason can be assigned, for the absence of those papers, which never fail to accompany a legal importation? Besides, the rum is claimed by Abbott, for himself and Nelson, although Nelson himself was in court, and filed a claim for the vessel. Independent of the objection to the claim itself, for this reason, the manner in which it is made, furnishes an additional ground of suspicion against the fairness of the transaction. As to Abbott, he has not produced the slightest evidence of ownership; and Nelson has no other evidence, than that which has been before noticed. Second. Another strong circumstance of suspicion, is the false destination of the vessel, and the consignment of the cargo. The manifest, which was delivered by the master to the custom house officer, states that the destination was to Cadiz, and that the vessel put into this port in distress, for the purpose of repairs. It also states, that the rum was consigned to Abbott of Cadiz. But Abbott resided in Philadelphia; and if, as is now contended, upon the total want of evidence, to prove property in Abbott, Nelson is the owner, what reason can be assigned, for making the consignment to any other than himself? Third. From the time this vessel entered the Delaware Bay, the entries in the log book ceased; and to account for this extraordinary omission. a very extraordinary and absurd reason, is assigned by the mate, viz. that the weather was so cold, as to prevent him from writing. It would have been less a ground of suspicion, if no reason had been assigned, than to offer one, so obviously untrue and ridiculous. Upon the whole, I am clearly of opinion, that the rum and the vessel are liable to forfeiture.

The decree of the district court was affirmed, as to the vessel, rum and coffee; and reversed as to the rest of the cargo.

After the decision was made, in the preceding case, the district attorney moved the court, to enter up judgment on the bond, which had been given by the claimant of the rum, and his security, upon the order of the district court. to deliver the same to the claimants. He referred to 2 [Bior. & D.] 65 [1 Stat. 85]; 3 [Bior. & D.] 221 [1 Stat. 695]; Acts 1789 and 1799,—which he contended, could only apply to the district court,

so far as it required the lapse of twenty days, before the judgment is to be rendered. The Alligator [Case No. 248]; McLellan v. U. S. [Id. 8,895]; H. Black. 164.

On the other side, it was contended; that The Alligator [supra], was against the motion; and that, upon the construction of the 89th section of the act of 1799, this court cannot give judgment on the bond, except in open court, and after twenty days, from the day when the sentence of condemnation passed. Besides, it was contended, that the sureties have a real defence to make in this case; the substance of which is, that after the rum was delivered to the claimant, he gave his sureties a lien on it, to induce them to join him on the bond. That the rum was, afterwards taken in execution by the marshal, to satisfy a judgment obtained by the United States, for duties due to them, the amount whereof was satisfied by the sureties; which they claim, as a set off against their bond, the marshal having intimated an opinion, that such a set off would be allowed.

WASHINGTON, Circuit Justice. This defence, could, by no means, avail the sureties, even if the marshal had made the most express promise, that the money paid by them, should be credited against their bond; because that officer has no power to bind the United States, by any promise which he may make. If the fact be, that Nelson pledged the rum to his sureties, to secure them against their undertaking for him, and, if in consequence thereof, they might have contested the right of the United States to levy an execution on it; still, as they voluntarily permitted the execution to be levied on it, and paid the money, they cannot now complain, and off set the money so paid. As to the main question, the 89th section of the act of 1799, seems to consider the bond, which is directed to be given by the claimant, for the appraised value of the property, in nature of a stipulation, according to the ordinary course of the admiralty; or else, it would hardly have directed judgment to be entered on it, without further delay, after the expiration of the twenty days. But the delay was clearly intended to be confined to the district court, where without further delay, the judgment might be rendered. It is totally inapplicable to the circuit court; because, the whole design of the provision would be defeated, if that court were bound to wait twenty days, after the sentence of condemnation, before judgment could be entered on the bond. I entirely concur in the decision of the court, in the case of The Alligator [Case No. 248]; and shall in conformity with it, direct judgment to be entered on the bond given in this case.

---

NELSON (UNITED STATES v.). See Cases Nos. 15,861–15,864.