**UNITED STATES of America, Plaintiff,**

**v.**

**Mohamed SALIM, a/k/a Abdul Qazi, a/k/a Mohamed Ali, Defendant.**

**No. 86–CR–741(S) (JBW).**

United States District Court, E.D. New York.

July 9, 1987.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., by Gordon Mehler, for plaintiff.

Jesse Berman, New York City, for defendant Mohamed Salim.

## MEMORANDUM and ORDER

WEINSTEIN, Chief Judge:

Defendant was found guilty by a jury of conspiracy to distribute and to possess with intent to distribute heroin (21 U.S.C. §§ 841(b)(1)(A)(i) and 846) and of offering a bribe to an agent of the United States Customs Service. 18 U.S.C. §§ 201(b) and 3623. He seeks a new trial.

Prior to trial defendant moved to suppress the deposition of a key prosecution witness who was deposed in France. He contends that the unreliability created by the conditions surrounding the deposition made its use at trial a violation of the evidentiary rules against admission of hearsay and of the defendant's Sixth Amendment confrontation rights.

Admission fully complied with the Federal Rules of Evidence and the Confrontation Clause. There is a suggestion in *Bourjaily v. United States,* — U.S. —, —, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987), that as to hearsay admissible under the Federal Rules of Evidence, "independent indicia of reliability" are not mandated by the Constitution. While the *Bourjaily* ruling may govern reversible error (Federal Rule of Evidence 103), it does not exhaust the trial judge's responsibility to ensure a fair trial. *See, e.g.,* Federal Rules of Evidence 102 (just determination), 403 (probative force weighed against prejudice) and 611 (control by court). In carrying out this mandate, the trial judge must determine if the jury can (1) reasonably find the evidence reliable and (2) properly evaluate it. If it admits evidence, the trial court must, where appropriate, redact and instruct the jury on dangers, methods of evaluation, and limited use. *See e.g.,* Federal Rule of Evidence 105. In addition to measuring the deposition against the language of the Federal Rules of Evidence, the court satisfied itself that the evidence was highly probative and that the jury could and probably would evaluate it properly. As further explicated below, defendant has no just cause for complaint.

## I. FACTS

Defendant was arrested at John F. Kennedy International Airport in Queens, New York where he had gone to pick up heroin from Ms. Bebe Soraia Rouhani, who was due to arrive from Paris enroute from Pakistan. A few hours before, Ms. Rouhani had been arrested by French officials at Paris' Orly Airport when four kilograms of heroin were found in her luggage. From Ms. Rouhani French authorities obtained the Pakistani name "Qazi," identifying the man who would meet her at the airport in New York to pick up the drugs. The French authorities contacted United States Customs agents in Paris, who forwarded this tip to their agents in New York. Defendant was arrested when he fled after an undercover agent in the lobby of the International Arrivals building at JFK Airport addressed him as Qazi and asked him if he were meeting Bebe.

In the car on the way from the airport to the Metropolitan Correctional Center, defendant offered Special Agent Nicholas Maggio $25,000 to be allowed to escape.

## II. PROCEDURE

### A. *Motion to Depose a Witness Abroad*

The government moved for issuance of letters rogatory to permit the taking of Ms. Rouhani's deposition in France, where she was under arrest awaiting trial for the smuggling of drugs. This court has jurisdiction to issue such a request in a criminal case. *See* Fed.R.Crim.P. 15(a) (depositions in federal criminal cases); *see also United States v. Steele,* 685 F.2d 793, 808–809 (3d Cir.), *cert. denied sub. nom. Mothon v. United States,* 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982). It was clear that Rouhani would be unavailable at trial due to her pending prosecution in France. The

showing of the critical nature of her testimony was sufficient to meet the test of "exceptional circumstances of the case" making it "in the interest of justice" that her deposition be taken. Federal Rule of Criminal Procedure 15(a).

The defendant was in custody. He could not go to France where neither United States Marshals nor French police would have had jurisdiction over him. To alleviate Sixth Amendment Confrontation Clause problems, the government suggested that two open international telephone lines link the courthouse in France with that in Brooklyn. This would have enabled defendant to hear Rouhani's testimony and consult privately with his counsel during the deposition. Videotaping the deposition was also proposed. *See* Federal Rule of Criminal Procedure 15(d) (referring to Federal Rule of Civil Procedure 30(b)(4) governing videotaped depositions).

A Request for Judicial Assistance issued from this court to the French court. It was respectfully suggested that the open telephone line and videotape deposition technique be utilized by the French court. This court assumed that defense counsel as well as an Assistant United States Attorney would be present at the deposition.

### B. *Conduct of the Deposition*

The deposition was conducted on February 3 and 10, 1987. Presiding was the Honorable Evelyne Verlenne-Thomas, Chief Examining Magistrate (Juge d' Instruction) of the Court of Grand Instance in Bobigny, France, near Paris.

On January 27, 1987, a week before the deposition, Magistrate Verlenne-Thomas showed Rouhani a single photograph of the defendant. Neither the prosecution nor the defense were notified of this interview until shortly before the deposition began. Defense counsel immediately objected to the procedure on the ground that it was unduly suggestive and violated defendant's due process rights (Deposition Transcript at 6–7 and 51; hereafter "D"). The government conceded that this showing was unduly suggestive and the photo-iden-

tification phase of the deposition was suppressed.

At the trial in this court, official United States Court Reporter Michael Picozzi, Jr. took the stand. Picozzi testified that he travelled to France and reported "every English word that was uttered in that room" during the deposition by means of mechanical stenography (Trial Transcript at 23, hereafter "T"). This testimony, while probably unnecessary under Federal Rule of Civil Procedure 80(c), which provides that a certified copy of the transcript of hearing testimony is admissible at a later trial, was requested by the court to provide the jury with a better understanding of how the deposition was taken. It allowed a simple method of authentication. *See* Federal Rule of Evidence 901(b)(1). The reporter was permitted to describe the distraught demeanor of the witness.

Prior to Mr. Picozzi's taking the stand the court instructed the jury on the letters rogatory procedure and the circumstances under which the deposition was taken. Specifically, the court noted that the French court, in keeping with French law, refused to allow a video or aural tape recording of the deposition (T. at 3; *see also* D. at 17, 19). The court additionally instructed the jury that the French court followed its practice of requiring the submission of written questions by the attorneys for both sides which the judge used to conduct the deposition (T. at 1–2).

On cross-examination Mr. Picozzi noted that the questions were read aloud by the judge in French, translated into Farsi for the witness, and that, prior to answering, the witness frequently exercised her right as an accused in a French criminal proceeding to consult with her attorney (T. at 17–18). Occasionally the deponent had her attorney answer for her (D. at 98–100). Mr. Picozzi testified that neither Mr. Berman, the defendant's attorney, nor Mr. Mehler, the Assistant United States Attorney, were present during the questioning. In attendance were the judge, her law clerk, the witness, the witness' attorney,

the French-Farsi and French-English interpreters and the reporter (T. at 8).

The transcript of the pre-deposition conference indicates that the French court excluded the defendant's attorney on the ground that under French law he had no standing before that court because his client was not present (D. at 5–6, 18, 27–30, 33, 36, 56, 60–61). The French judge offered the Assistant United States Attorney the opportunity to remain, but he chose to absent himself in order that no preference appear to be given to the prosecution (T. at 32–33).

During the initial day of questioning, after the judge examined on direct, the witness' answers were read back to the attorneys for both sides (D. at 63–69). Defense counsel then submitted written cross-examination questions, the judge examined, and the answers were read back (D. at 97–104). Defense counsel submitted additional written questions, and further rounds of cross-examination ensued (D. at 119–121).

While the deposition went forward in France the defendant sat in the United States Attorney's office in Brooklyn in the custody of United States Marshals, accompanied by an English-Urdu interpreter. No calls were made to the defendant from his counsel in France during the first stage of the deposition. Since the French judge was not available to continue the deposition for several days, counsel and Mr. Picozzi flew back to the United States, where Mr. Picozzi quickly prepared a transcript of the proceedings for defense counsel who used it in consulting with his client.

The deposition resumed a week later with another round of similarly conducted examination. This time the answers were first read back to the attorneys for both sides and then read to the defendant by telephone with the aid of the English-Urdu interpreter (D. at 128–139). Further written cross-examination questions were then presented to the witness by the judge, after which a round of redirect examination was conducted (D. at 140–142). The results of this examination were read and interpreted to the defendant in New York. After private consultation between the defendant and his attorney the French proceedings were concluded (D. at 145).

This court reviewed the deposition transcript with counsel prior to trial, ruling on objections and deleting questions and responses as needed. At trial, the court's law clerks read the edited deposition transcript to the jury. The jury was not provided with a copy of the deposition. The court provided the jury with an explanatory and cautionary instruction emphasizing the dangers arising from the lack of ability of the jury to evaluate credibility adequately, particularly because of its inability to observe the deponent's demeanor. It stated in part:

> The defendant, who has a constitutional right to confront the witness against him, was not present. His constitutional rights were not violated but he did not confront her.
>
> It may have affected her testimony.
>
> In addition, you are not in a position to observe the way she testified so you cannot observe her demeanor. That means that it is less likely that you will be able to evaluate her credibility as well as you could evaluate the credibility of a witness who you saw testify before you.

(T. at 2–3).

Further instructions on evaluating the credibility of witnesses, and particularly those with a motive to curry favor with the government, were given in the charge.

## III. LAW

### A. *Deposition Transcript Admissible Under Federal Rule of Evidence 804(b)(1) Hearsay Exception for Former Testimony*

There is no doubt of the unavailability of the witness under Federal Rule of Evidence 804(a). The government attempted to have the witness produced in this court but was rebuffed by the French government. Under these circumstances, Federal Rule of Evidence 804(b)(1) governs admission. It provides:

> (b) *Hearsay exceptions.* The following are not excluded by the hearsay rule

if the declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

....

The deposition was taken specifically for use at the trial of this defendant on these charges. There is, thus, no question that the prosecution and the defendant had a "similar motive to develop the testimony by direct, cross, or redirect examination." Federal Rule of Evidence 804(b)(1). Defendant's objections are based on his less than perfect "opportunity ... to develop the testimony." Federal Rule of Evidence 804 (b)(1).

The deposition was taken in compliance with French law and American procedure for the conduct and admission of depositions in criminal cases. Federal Rule of Criminal Procedure 15(d) provides that, with certain exceptions not here relevant:

(d) *How Taken.* Subject to such additional conditions as the court shall provide, a deposition shall be taken ... in the manner provided in civil actions ... provided that ... the scope and manner of examination and cross-examination shall be such as would be allowed in the trial itself.

Reference must be made to the Federal Rules of Civil Procedure to determine the applicable procedures for the taking of depositions.

Testimony was taken pursuant to a letter rogatory because the declarant was incarcerated in France. The Advisory Committee Note to the 1963 Amendment to Federal Rule of Civil Procedure 28(b) indicates that "[i]n executing a letter rogatory the courts of other countries may be expected to follow their customary procedure for taking testimony" (citing *United States v. Paraffin Wax, 2255 Bags,* 23 F.R.D. 289, 290 (E.D.N.Y.1959)). The same amendment addresses defendant's objections to the failure to swear the witness and to the claims of incompleteness of the transcript. The rule specifically provides:

... Evidence obtained in response to a letter rogatory need not be excluded merely for the reason that it is not a verbatim transcript or that the testimony was not taken under oath or for any similar departure from the requirements for depositions taken with the United States under these rules.

Federal Rule of Civil Procedure 28(b).

The drafters intended that technical differences in procedure between common law and civil law countries not become a bar to admission of evidence obtained through depositions in civil law countries. The committee explained:

In many non-common-law countries the judge questions the witness, sometimes without first administering an oath, the attorneys put any supplemental questions either to the witness or through the judge, and the judge dictates a summary of the testimony, which the witness acknowledges as correct.

Advisory Committee Note to Federal Rule of Civil Procedure 28(b) (citations omitted).

This is the usual procedure in France. Here, the French court graciously departed from its usual practice of dictating a summary, permitting an official United States court reporter to transcribe the proceedings. The court, having carefully read and redacted the 145-page transcript, and having heard the testimony of its official court reporter, finds that the transcript is as close to a verbatim account as is possible, given the difficulties posed by the need to use two sets of translators.

Because neither side questioned the witness directly, the proceeding effectively changed in character from a deposition based on oral questions to a deposition based on written questions. Depositions in criminal cases may be taken on written questions. *See, e.g., United States v. Trout,* 633 F.Supp. 150 (N.D.Cal.1985) (authorizing issuance of letters rogatory with attached written questions in criminal case); Federal Rule of Criminal Procedure

15(d); Federal Rules of Civil Procedure 30(c), 31.

The cross-examination questions were served upon the government just prior to their being asked. Defendant's objection is not grounded in notice to the prosecution but in notice to the deponent. The extent of this notice was disputed, but testimony at trial tended to show that it was for a short period. Even if the witness were aware of the questions before they were asked, the transcript supports the conclusion that notice had no appreciable effect on the answers.

A similar procedure was employed in *United States v. Trout,* 633 F.Supp. 150 (N.D.Cal.1985). The court in *Trout* granted the defendant's motion for issuance of letters rogatory to obtain testimony from a witness in Brazil. Brazilian procedure required the use of written questions appended to the letters rogatory. The court rejected the government's argument that submission of its cross-examination questions in advance of receiving the answers to the direct examination would result in the evidence obtained by this procedure being inadmissible hearsay. 633 F.Supp. at 152–153.

Under French law the deponent could not be sworn because she was an accused in an ongoing criminal investigation. The French judge, however, strongly cautioned the deponent on the gravity of the proceedings and inquired if the deponent understood this. The cautionary instruction and the deponent's acknowledgement satisfy the requirement that the witness "be required to declare that [s]he will testify truthfully, by oath or affirmation administered in a form calculated to awaken [her] conscience and impress [her] mind with [her] duty to do so." Federal Rule of Evidence 603.

■ "Principles of comity as well as common knowledge preclude our characterizing the French judicial system as any less fair than our own." *Murty v. Aga Khan,* 92 F.R.D. 478, 482 (E.D.N.Y.1981). *See also* H. Abraham, *The Judicial Process: An Introductory Analysis of the Courts of the United States, England and France,* 254–269 (1975) ("The French administration of justice, far more than the Anglo-American, has become a model abroad"); Schlesinger, *Comparative Criminal Procedure: A Plea for Utilizing Foreign Experience,* 26 Buff.L.Rev. 361, 372–85 (1977); Damaska, *Structure of Authority and Comparative Criminal Procedure,* 84 Yale L.J. 480, (1975); Damaska, *Evidentiary Barriers to Conviction and Two Models of Criminal Procedure: A Comparative Study,* 121 U.Pa.L.Rev. 506 (1973). Judicial notice of the nature of a foreign judicial system is appropriate on a motion to suppress evidence gathered abroad. *See* Federal Rule of Evidence 201(f) ("Judicial notice may be taken at any stage in the proceeding").

To the extent that Federal Rule of Criminal Procedure 15(d) adopts the procedures utilized for taking civil depositions, the deposition was conducted in substantial compliance with the rules. Admissibility of a deposition is, however, determined by the rules of evidence. Federal Rule of Criminal Procedure 15(e). Federal Rules of Evidence 804(a) and 804(b)(1) were complied with. Hearsay may be used in determining admissibility; a preponderance is the standard of proof for determining whether a predicate of admissibility has been established. *See* Federal Rule of Evidence 104(a); *Bourjaily v. United States,* —— U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). This standard was more than met.

## B. *Deposition Transcript Admissible Under Federal Rule of Evidence 804(b)(5)*

■ An independent alternative basis for admission is provided by the residual exception to the hearsay rules. Federal Rule of Evidence 804(b)(5) provides:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: ...

(5) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that

(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by an admission of the statement into evidence....

Rouhani's testimony possessed circumstantial guarantees of trustworthiness at least equivalent to those offered by the enumerated hearsay exceptions in Rule 804(b). Her testimony was given under the equivalent of an oath, before a judge, transcribed by an experienced official court reporter and subjected to what was in effect extensive cross-examination.

As required by Rule 804(b)(5), the court finds by more than a preponderance of the evidence that: (1) Rouhani's testimony was offered as evidence of material facts in issue. The testimony connected defendant to the intended distribution of the heroin found in Rouhani's suitcases. (2) Rouhani's statements, which directly implicated defendant, were more probative evidence of his participation in the conspiracy than any other evidence the prosecution could reasonably have produced. (3) Admission served the purpose of the rules of evidence, including the ascertainment of truth in "proceedings justly determined." Federal Rule of Evidence 102. The defendant was advised long in advance of the government's intention to use the testimony at trial.

### C. *Admission of the Deposition Did Not Violate Defendant's Right to Confront the Witness*

#### (1) *Admission of Former Testimony of an Unavailable Witness Did Not Violate the Confrontation Clause*

■ The Supreme Court has developed a flexible and somewhat ambiguous shifting two-part test for determining whether the admission of hearsay declarations against a defendant violates the defendant's rights under the Confrontation Clause. First, the prosecution must generally demonstrate that the hearsay declarant is unavailable.

*But see United States v. Inadi,* 475 U.S. 387, ——, 106 S.Ct. 1121, 1125–26, 89 L.Ed.2d 390 (1986) (unavailability not required for coconspirator declarations—and perhaps other Rule 801 and Rule 803 exceptions). Unavailability is shown if the prosecution sustains its burden of showing that it made "good-faith efforts" to obtain the witness' presence at trial. *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980). The government met this burden by making uncontradicted representations concerning Ms. Rouhani's incarceration in France pending trial and the lack of a treaty between the United States and France which would permit her extradition to testify. The court was entitled to rely upon these representations. *See United States v. Sindona,* 636 F.2d 792, 804 (2d Cir.1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981).

Once the witness' unavailability has been demonstrated, the court, in determining admissibility, must generally consider whether the out-of-court statement bears sufficient "indicia of reliability," *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970), and "afford[s] the trier of fact a satisfactory basis for evaluating the truth of the prior statement." *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970). The Supreme Court has indicated that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). *See also Bourjaily v. United States,* —— U.S. ——, ——, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987).

The hearsay exception for prior-recorded testimony is a "firmly rooted hearsay exception." At least since *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), the Supreme Court has held that admission of prior-recorded testimony in appropriate cases does not violate the Confrontation Clause. *See, e.g., Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972) (testimony of key witness from prior trial admissible

where witness unavailable because of residence out of country); *California v. Green*, 399 U.S. 149, 165–168, 90 S.Ct. 1930, 1938–40, 26 L.Ed.2d 489 (1970) (alternative holding: statement given under oath and subject to cross-examination at preliminary hearing is admissible as prior testimony if declarant-witness prevents effective questioning at trial).

In *Bourjaily v. United States*, — U.S. —, —, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987), the Supreme Court seemed to indicate that reliability need not be shown by the prosecutor if evidence is admissible under the coconspirator rule. Federal Rule of Evidence 801(d)(2)(E). We need not decide if this ruling will be applied to other well accepted hearsay exceptions because it is quite clear that the deposition was reliable in two senses: first, it was highly likely to have accurately related the actual events in question, and, second, the jury could evaluate its probative force fairly.

### (a) *Letters Rogatory*

Because they generally provide useful evidence, letters rogatory have long been issued by the federal courts to request the assistance of foreign courts in obtaining testimony from witnesses in civil cases. *See, e.g., Nelson v. United States*, 17 Fed. Cas. 1340 (No. 10,116) (C.C.D.Pa.1816). *Cf. Winthrop v. Union Ins. Co.*, 30 Fed.Cas. 376 (No. 17,901) (C.C.D.Pa.1807) (commission). If honored by the foreign tribunal they provide compulsory process abroad. *See* Smit, *International Aspects of Federal Civil Procedure*, 61 Colum.L.Rev. 1031, 1056–1059 (1961); Doyle, *Taking Evidence by Deposition and Letters Rogatory and Obtaining Documents in Foreign Territory*, ABA Sec. Int'l & Comp.L. 37, 39–47 (1959); Jones, *International Judicial Assistance: Procedural Chaos and a Program for Reform*, 62 Yale L.J. 515, 518–534 (1953).

Under an earlier version of Federal Rule of Criminal Procedure 15, the court could order the taking of a deposition of a defense witness in a criminal case. The question whether issuance of a letter rogatory to obtain testimony against a defendant in a criminal case violates the Confrontation Clause did not arise until recently because Congress did not authorize the government to take such depositions in all criminal cases until 1975. *See* Advisory Committee Note on 1974 Amendment to Federal Rule of Criminal Procedure 15 (authorizing government depositions in all criminal cases); 18 U.S.C. § 3503 (1982) (authorizing government depositions in organized crime cases only; effective date 1970).

All the courts which have considered the matter have concluded that use of letters rogatory to secure testimony of a government witness in a criminal case does not violate the Confrontation Clause. *See United States v. Johnpoll*, 739 F.2d 702 (2d Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984) (defendant waived his right to confront the witness when he and his attorney failed to appear at Swiss depositions); *United States v. Sindona*, 636 F.2d 792 (2d Cir.1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981) (deposition taken in Italy and attended by lead defense counsel admissible); *United States v. Steele*, 685 F.2d 793, 808–809 (3d Cir.), *cert. denied sub. nom. Mothon v. United States*, 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982).

### (b) *Cross-Examination on Written Questions Satisfies the Constitution*

The oath (or its equivalent) of the witness does provide a guarantee of trustworthiness of the testimony. *California v. Green*, 399 U.S. 149, 159, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). The French judge's cautionary instruction and the witness' acknowledgement serve the same functions as an oath. *See* Federal Rule of Evidence 603, requiring that the oath or other technique be "calculated to awaken" the "conscience" and "impress" the witness with her "duty" to speak truthfully.

Defendant's objections center on the manner in which cross-examination was conducted. He contends that cross-examination conducted by the French judge upon written questions is constitutionally insufficient because neither he nor his counsel were present during the questioning.

Nevertheless, the transcript supports the conclusion that the method used provided much the same information that would have been elicited had the normal cross-examination in our court been possible.

In cases involving foreign depositions, the manner in which cross-examination is conducted cannot be expected to conform precisely to the paradigm of cross-examination in-court at trial before a jury. "While a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable, [the Supreme Court] has rejected that view as 'unintended and too extreme.' *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980)." *Bourjaily v. United States,* —— U.S. ——, ——, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987). The Court has yet to address the situation at issue here—where a foreign judge conducts the questioning. Nevertheless, it has found that other unconventional methods of examination provide what the Sixth Amendment demands: "substantial compliance with the purposes behind the confrontation requirement." *California v. Green,* 399 U.S. 149, 166, 90 S.Ct. 1930, 1939, 26 L.Ed.2d 489 (1970).

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court found that a preliminary hearing transcript was properly admitted even though the defense counsel never actually cross-examined the witness. It held the Confrontation Clause satisfied because defense counsel's questioning of the witness on direct "partook of cross-examination as a matter of *form* " and "comported with the principal *purpose* of cross-examination: to challenge" the veracity, perception, and meaning of the witness' statements. 448 U.S. at 70–71, 100 S.Ct. at 2541 (emphases in original).

In the instant case the French judge put all but one of defense counsel's questions to the witness during four rounds of cross-examination over a period of days. The French judge also asked follow-up questions of her own. Defense counsel was afforded the opportunity to go over the witness' responses to the questions with the defendant after each round of cross-examination and submit further questions. While admittedly there was a loss of some spontaneity in the witness' responses due to the procedure employed, defense counsel was not significantly limited in the scope of his cross-examination. As in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the method of cross-examination employed here was unconventional, but the result was "the equivalent of significant cross-examination." 448 U.S. at 70, 100 S.Ct. at 2541.

Defendant objects to the fact that the witness was permitted to consult with her attorney after each question was asked. On a few occasions, the witness refused to answer the question and in a few instances her attorney answered for her. Prior to trial the court redacted the attorney's responses. During the reading of the deposition at trial the jury was apprised of the fact that the witness did not answer all of the questions asked.

The witness' failure to respond to a few questions does not vitiate the court's finding that there was significant cross-examination. Recalcitrant witnesses take the stand and invoke the privilege in American courts and their testimony is not always stricken. The witness here was an accused in a French criminal proceeding arising from the same transaction involved in this case. She was entitled to procedural guarantees provided by the French system, including the presence of her attorney during any questioning. Without attempting to decide the law of French criminal procedure, the court finds, for the purposes of this case, that the witness' refusals to respond were grounded in her rights as an accused under French law.

Defendant also objected to introduction of the deposition because it was not recorded on video or aural tape, as contemplated in the government's papers seeking issuance of a request for judicial assistance to the French court. This objection is directed to the jury's inability to observe the witness' demeanor while she was testifying. The only evidence of the witness' demeanor presented at trial was the testi-

mony of the court reporter, Michael Picozzi, describing the witness and indicating that she was on the verge of tears throughout the deposition.

 Demeanor of a witness, whether on or off the witness stand, may be observed by the jury both on the issue of credibility and, where relevant, as evidence-in-chief. *See, e.g., United States v. Schipani*, 293 F.Supp. 156, 163 (E.D.N.Y.1968), *aff'd*, 414 F.2d 1262 (2d Cir.1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970); *Georgia Home Insurance Co. v. Campbell*, 102 Ga. 106, 108, 29 S.E. 148, 149 (1897). Where the witness is not present, as in the case of a deposition, someone who observed the deposition may describe what occured. *Morrow v. Wyrick*, 646 F.2d 1229 (8th Cir.), *cert. denied*, 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981). That description may include the setting as well as the demeanor and words of the declarant. The witness to the declaration is present at the trial and subject to cross-examination before the jury. This commonsensical result is supported by Rule 806 of the Federal Rules of Evidence. It permits evidence on "credibility of the declarant" to the same extent as "if declarant had testified as a witness."

This case is quite unlike *Gill v. Stolow*, 16 F.R.D. 9 (S.D.N.Y.1954). In that case the deposition was being taken before a United States Vice Consul in Germany. The Vice Consul gratuitously indicated on the record that the deponent "referred constantly to a copy of the interrogatories ... on which he had entered comments in longhand," and "referred frequently to a piece of paper on which he had jotted down certain dates and facts." 16 F.R.D. 9. In addition, the Vice Consul noted "that the witness interrupted the questioning at one point to eat hazel nuts and drink a glass of water, and that he stated it was always necessary for him to eat something when he became nervous." *Id.* The court properly suppressed these portions of the deposition which were hearsay. There was no opportunity to question the Vice Consul about the accuracy of his observations. In the case now before us, by contrast, the

official court reporter, who observed the deponent's demeanor, was present at the trial in this court, subject to examination and cross-examination. The reporter testified to his recollection of observations he had made directly. This is not hearsay. The only reason for excluding this testimony would be lack of relevancy. This testimony was, however, highly relevant on the issue of the deponent's credibility and thus was properly admitted under Rules 401–403 of the Federal Rules of Evidence.

Defendant's objection to introduction of a transcript of the deposition on the ground that a videotape was envisioned, fails because the Confrontation Clause does not require that prior-recorded testimony be videotaped in order to be admissible. While the courts have encouraged the use of the latest technological means to preserve testimony, their use is not always feasible. *See, e.g., United States v. Kehm*, 799 F.2d 354 (7th Cir.1986) (admitting transcript of deposition taken in the Bahamas); *United States v. Johnpoll*, 739 F.2d 702 (2d Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984) (admitting transcript of deposition taken in Switzerland); *United States v. Johnson*, 735 F.2d 1200 (9th Cir.1984); (admitting transcript of deposition of American ambassador taken in Italy). Even videotaped depositions are not perfect substitutes for live testimony and the opportunity to observe the witness in the flesh. *See United States v. King*, 552 F.2d 833, 841 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

 Before the deposition was read, the court, as indicated above, instructed the jury concerning the lack of full demeanor evidence and the need to treat the deposition with caution. Absence of an opportunity for the jury to acquire demeanor evidence through its own observations is not fatal so long as the court finds that the jury has an adequate basis upon which to evaluate the witness' credibility and that the testimony is not untrustworthy. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (admitting preliminary hearing transcript). If the

rule were otherwise, prior-recorded testimony could only be offered if the witness were on the stand. In the instant case the deponent's testimony, both on direct and on cross-examination, afforded the jury an adequate opportunity to assess her credibility. The jury was instructed that the deponent was being held by the French authorities so her motive to cooperate was clear. Her testimony, in which she denied knowing that drugs were in her suitcases, revealed that she had an interest in shifting blame onto someone else. The deponent's testimony was sufficiently trustworthy to be admitted; it was given under the equivalent of an oath, before a judge and subjected to rigorous examination, thus permitting the jury to evaluate its worth.

(2) *Admission Under the Residual Exception to the Hearsay Rule Did Not Violate the Confrontation Clause*

■ Article VIII of the Federal Rules of Evidence is by now—ten years after promulgation by the Court and adoption by Congress—"a firmly rooted" set of hearsay exceptions. Its availability and widespread adoption by the states show that Article VIII "responds to the need for certainty in the workaday world of conducting criminal trials." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Rules 803(24) and 803(5) are an integral part of Article VIII and have now achieved full status as hearsay exceptions.

Nevertheless, analysis of confrontation clause aspects of admission under Federal Rule of Evidence 804(b)(5) has, in the past, proceeded somewhat differently from analysis of admission under other hearsay exceptions. In part this was because Rule 804(b)(5) was not considered a "firmly rooted hearsay exception," from which reliability could be inferred automatically. *See United States v. Marchini*, 797 F.2d 759, 764, (9th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987); *United States v. Barlow*, 693 F.2d 954, 964 (6th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). In part it was because the exceptions in Rules 803(1)–(23) and 804(b)(1)–(4) reflect categories or classes of hearsay where circumstantial proof suggests trustworthiness of the whole class of hearsay. By contrast, Rules 803(24) and 804(b)(5) appear to require a finding of trustworthiness as to the particular hearsay at issue. In fact, for reasons beyond the scope of this opinion, this sharp difference is blurred in practice.

Typical of the approach is the recent decision in *Bourjaily*, where the Supreme Court assumed the trustworthiness of the class of coconspirator statements falling under Rule 801(d)(2)(E), but suggested that the catchall exception required a more specific guarantee of the particular declaration being considered. It noted:

> First, out-of-court statements are only *presumed* unreliable. The presumption may be rebutted by appropriate proof. *See* Fed.Rule Evid. 803(24) (otherwise inadmissible hearsay may be admitted if circumstantial guarantees of trustworthiness demonstrated).

*Bourjaily v. United States*, — U.S. —, —, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987) (emphasis in original). Rule 803(24) is identical in terms to Rule 804(b)(5). We need not decide now whether the different referents in Rules 803(24) and 804(b)(5) provide for a different level of trustworthiness. Under any level, trustworthiness was shown by the preponderance standard *Bourjaily* requires.

The Supreme Court recently explicitly reaffirmed its position, earlier enunciated in *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, that

> even if certain hearsay evidence does not fall within "a firmly rooted hearsay exception" and is thus presumptively unreliable and inadmissible for Confrontation Clause purposes, it may nonetheless meet Confrontation Clause reliability standards if it is supported by a "showing of particularized guarantees of trustworthiness."

*Lee v. Illinois*, 476 U.S. 530, — – —, 106 S.Ct. 2056, 2063–2064, 90 L.Ed.2d 214 (1986).

The Court has consistently repeated that it has not sought to "map out a theory of the Confrontation Clause that would deter-

mine the validity of all ... hearsay 'exceptions.'" *United States v. Inadi,* 479 U.S. 975, ——, 106 S.Ct. 1121, 1125, 89 L.Ed.2d 39 (1986) (quoting *California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970)). The Court has, however, by promulgating Rule 804(b)(5) pursuant to its rulemaking authority, presumptively found evidence admissible under this and the other hearsay exceptions embodied in the Federal Rules of Evidence, including the non-traditional exception of Rules 803 (24) and 804(b)(5), to be sufficiently reliable to overcome hearsay and confrontation dangers. Congress has confirmed this view by enacting the Federal Rules of Evidence. The Court has explicitly rejected a reading of the "Confrontation Clause [as] nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law." *California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 1933–1934, 26 L.Ed.2d 489 (1970).

### IV. *Conclusion*

Whether the deposition be treated as within a class of reliable hearsay pursuant to Rule 804(b)(1), or as having strong specific indicia of reliability under Rule 804(b)(5), it passes muster. The deposition of Bebe Soraia Rouhani was properly admitted. The evidence of guilt was highly persuasive. There is no basis for a new trial.

So ordered.