**UNITED STATES of America**

v.

**Edmond GIFFORD, Joseph Kelly.**

**Nos. 87–00258–23, 87–00258–24.**

United States District Court,
E.D. Pennsylvania.

April 22, 1988.

Barry Gross, Michael Levy, Philadelphia, Pa., for plaintiff.

Thomas Moribondo, Joseph Caruso, Philadelphia, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

Defendants Gifford and Kelly[1] have moved to preclude the introduction of videotape depositions taken in Belgium. On September 23, 1987, I authorized the government's taking of pre-trial depositions of Abdelkader Azaglou, Leon Desmet, Mr. and Mrs. Michael Kautsky, Jean Paul Micheils, Franciscus Moens, Pierre Nocent, M. Picavet, M. Van Den Berg, and M. Van Den Meersch. Order of September 23, 1987, *United States v. Scarfo*, et al., No. 87–258. Defendants object to the admissibility of these depositions on two bases: the confrontation clause and Rule 804(a) of the Federal Rules of Evidence.

### *Confrontation Clause*

 The confrontation clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This right secures "an adequate opportunity to cross-examine adverse witnesses." *United States v. Owens,* — U.S. —, —, 108 S.Ct. 838,

---

1. Defendants DiTullio and Romolini have joined in this motion.

——, 98 L.Ed.2d 951 (1988). *Accord Government of Virgin Islands v. Aquino*, 378 F.2d 540, 547 (3d Cir.1967). "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Owens*, —— U.S. at ——, 108 S.Ct. at —— (emphasis in original) (citations omitted); *see also Ohio v. Roberts*, 448 U.S. 56, 70–71, 100 S.Ct. 2531, 2541, 65 L.Ed.2d 597 (1980) (counsel's questioning satisfied confrontation clause because it took form of cross-examination and fulfilled purpose of cross-examination). The manner of cross-examination need only substantially comply with the purposes behind the confrontation clause: (1) ensuring that witnesses will testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe the demeanor of the witnesses. *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970); *see also United States v. Sines*, 761 F.2d 1434, 1441 (9th Cir.1985); *United States v. Salim*, 664 F.Supp. 682, 691 (E.D.N.Y.1987) (both cases citing, *inter alia, Green*).

■ I conclude that the cross-examination conducted at the Belgian depositions comported with the purposes of the confrontation clause. The Special Master, the Honorable Edmund L. Palmieri, administered to each witness the oath ordinarily given in the federal courts. *See* Government's Response to the Defendants' Motions to Bar Introduction of Belgian Depositions, at 4; Report of Special Master, *United States v. Scarfo, et al.*, No. 87–00258, at 1. The defendants, through their counsel, were given an adequate opportunity to cross-examine the witnesses. No limits to the scope or nature of cross-examination by counsel were imposed. Defendants Kelly and Gifford listened to each deposition in the Marshal's Office in Philadelphia contemporaneously through a telephone connection with the hearing room in Brussels. *See* Government's Response, at 4;

Report of Special Master, at 2. Counsel were permitted to confer privately with their clients throughout the depositions, using telephones located outside the hearing room. *See* Government's Response, at 4; Report of Special Master, at 2–3. The depositions were interrupted a number of times when counsel left to speak with their clients on these telephones. Report of Special Master, at 3. Finally, all of the depositions taken in Belgium were videotaped, thus allowing the jury to observe the witnesses' demeanor. In *Salim*, a foreign deposition was admitted against a defendant in custody even though the deposition was conducted with less rigorous safeguards for effective cross-examination than those provided in this case. *See Salim*, 664 F.Supp. 682.

My conclusion that the Sixth Amendment has not been violated is consistent with other cases holding that the use of foreign depositions to obtain the testimony of a government witness in a criminal case does not violate the Sixth Amendment. *See Sines*, 761 F.2d at 1441–42; *United States v. Johnpoll*, 739 F.2d 702, 710 (2d Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984); *United States v. Steele*, 685 F.2d 793, 808 (3d Cir.), *cert. denied sub nom. Mothon v. United States*, 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982); *United States v. Sindona*, 636 F.2d 792, 804 (2d Cir.1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981).

■ The case which defendants cite, *United States v. Benfield*, 593 F.2d 815 (8th Cir.1979), is distinguishable. In the present case, the Belgian government refused to take custody of defendants Kelly and Gifford, thus making physical confrontation impossible.[2] No such barrier was present in *Benfield*: the deposition was taken simply to reduce the stress on the testifying witness. *Benfield*, 593 F.2d at 817. If the Court of Appeals for the Eighth Circuit has held that a face-to-face

---

**2.** I find that the government's alleged failure to transport the defendants to Belgium is not in itself a violation of the Confrontation Clause. The government made several requests to the

Belgium government to take custody of them and proposed alternative arrangements, but the Belgian government refused. *See* Government's Response, at 1–2.

confrontation is required by the Sixth Amendment, I respectfully disagree (for the reasons stated in this Memorandum, *supra* p. 127).[3]

The testimony taken in Belgium also contains the "indicia of reliability" required by the confrontation clause.

> [c]ourts are not expected to determine whether testimony bears sufficient 'indicia of reliability' based upon their perceptions of the inherent reliability or unreliability of the deponent, but instead must make this determination based upon such guarantees of trustworthiness such as the opportunity of the defendants' counsel to cross-examine, the administering of an oath to the deponent, and the jury's opportunity to observe his demeanor.

*Sines,* 761 F.2d at 1442. Because of the procedures utilized to conduct these depositions, *see supra* p. 127, I find that this testimony contains sufficient indicia of reliability.

### Availability of Witnesses

■ Rule 15(e) of the Federal Rules of Criminal Procedure permits the use of a deposition at trial "so far as otherwise admissible under the rules of evidence ... if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence...." *See also United States v. Ismaili,* 828 F.2d 153, 162–63 n. 7 (3d Cir.1987) (unavailability under Fed.R. Crim.P. 15(e) defined by reference to Fed. R.Evid. 804(a)), *cert. denied,* —— U.S. ——, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988). "Unavailability is determined according to the practical standard of whether under the circumstances the government has made a good-faith effort to produce the person to testify at trial." *Johnpoll,* 739 F.2d at 709 (citations omitted); *see also Roberts,* 448 U.S. at 74, 100 S.Ct. at 2543. "The lengths to which the prosecution must go to produce a witness ... is a question of reason-

ableness." *Roberts,* 448 U.S. at 74, 100 S.Ct. at 2543 (citations omitted). The government has made reasonable good-faith efforts to obtain the Belgian witnesses.

First, the United States has no treaty with the Kingdom of Belgium that would make the witnesses amenable to service of process. As a result, a subpoena could not be enforced against the Belgian witnesses, who are neither citizens nor residents of the United States. The witnesses are thus not considered personally available unless they consent to appear at trial. *See Johnpoll,* 739 F.2d at 709.

Second, the Belgium Police Judiciare advised all of the witnesses that the United States Government would pay for their transportation, lodging and food while they were in the United States, and pay them a standard witness fee of $30 a day. Notwithstanding the government's offer, all of the witnesses were unwilling to come to the United States to testify at trial. *See* Picavet Deposition (hereinafter Dep.), at 3; Azaglou Dep., at 5–6; Desmet Dep., at 3 (stipulation); Van Den Meersch Dep., at 4–5; Moens Dep., at 3 (stipulation); Nocent Dep., at 14, 43, 44; Van Den Bergh Dep., at 3–4; Kautsky Dep., at 3 (stipulation). Mr. Micheils stated in his deposition that he would be willing to come to the United States if necessary, *see* Micheils Dep. at 5, but the government has represented that at this time he is unwilling to come to the United States for trial.[4] Therefore, the government has made a good-faith effort to produce these witnesses for trial. *Accord Johnpoll,* 739 F.2d at 709–10; *Sindona,* 636 F.2d at 804. The government believes that these witnesses still refuse to come to the United States to testify at trial. Government's Response, at 6. There is nothing before me to demonstrate the contrary. My finding of good-faith efforts is also supported by the fact that the govern-

---

**3.** The Eighth Circuit would allow a narrow exception to the face-to-face requirement based on "necessity or waiver". *Benfield,* 593 F.2d at 821. Assuming arguendo that a face-to-face confrontation is generally required, I conclude that the absence of a face-to-face confrontation was necessary in the case at bar.

**4.** I am permitted to rely on the representations of counsel with respect to unavailability of witnesses. *See, e.g., Sindona,* 636 F.2d at 804.

ment did produce foreign witnesses at trial who were willing to come to the United States and testify.

Defendants assert that the government must show a "diligent effort" to secure the witnesses' testimony. Defendants' Memorandum of Law, at 4 (citing *Aquino,* 378 F.2d at 551). They further assert that this effort must be "genuine and bona fide." *Id.* Based on the facts available to me, a diligent, genuine and bona fide effort has been made by the government.[5]

 The depositions of Messrs. Lorge, Desmet, Mollinger, and Merlevede are admissible as custodians of foreign records. The records could have been produced without the custodian's testimony, *see* 18 U.S.C. § 3505 (foreign records of regularly conducted activity). Their testimony permitted cross-examination by defendants' counsel, an opportunity foreclosed by introducing the records through a foreign certification. Moreover, the government has represented that these witnesses also are unwilling to come to the United States for trial.

---

**5.** I also conclude that good-faith efforts have been made to produce the witnesses for purposes of the confrontation clause. *See Roberts,*

448 U.S. at 74, 100 S.Ct. at 2543; *Steele,* 685 F.2d at 808; *Sindona,* 636 F.2d at 804.